**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00587 (ABJ)** |
| **v.** | : | |
| | : | |
| **JOHN SCHUBERT, JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence John Schubert, Jr. to two months of home detention, a probationary term of three years, 60 hours of community service, and $500 in restitution.

**I.     Introduction**

Defendant John Schubert, Jr. and his wife, Amy Schubert (Case No. 21-cr-588 (ABJ)),[1] participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' worth of property damage. The government is requesting a sentence of two months of home detention and a probationary term of three years in this case.

The government recognizes that John Schubert, Jr. did not personally engage in or espouse violence or property destruction; however, John Schubert, Jr. and Amy Schubert scaled

---

[1] Amy Schubert was charged separately, pled guilty to violating 40 U.S.C. § 5104(e)(2)(G), and is also awaiting sentencing by this Court on March 8, 2022.

a wall on the West Front of the Capitol, entered the Capitol by climbing through a broken window adjacent to the Senate Wing doors approximately two minutes after the doors and windows were initially breached, and subsequently stayed in the Capitol building for at least 34 minutes.  John Schubert and Amy Schubert traveled into the Rotunda, Statuary Hall, and adjacent hallways. Amy Schubert also briefly entered a Congressional meeting room to take a picture of an individual holding a sign and the rioters outside of the Capitol. On January 6, Amy Schubert sent several private texts with her cell phone about her entry into the Capitol and indicated as follows:

> 2:32 p.m. – *We're in the capital bldg.*

> 3:07 p.m. – *Yes we climbed up walls. Thru a broken window. John sin [sic] got clubbed and maced. John and I got a little maced.*

> 4:46 p.m. – *Johnny got clubbed and maced and john and I got maced in our mouths. A woman was shot 20 feet in front of use [sic]. We're ok. Got a little confrontation w/ Antifa.*

On January 8, Amy Schubert sent another text message in which she stated:

> *I'm not sure we should have pix on fb from DC event – I don't want to help government to be able to match up exactly how we looked/what we were wearing that day. I'm thinking maybe we should take them down….*

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, including Amy Schubert, the riot likely would have failed.

Here, the defendant's participation in a riot that actually succeeded in halting the Congressional certification combined with his behavior and actions renders the recommended sentence "sufficient, but not greater than necessary to comply with the purposes of" the federal sentencing regime in this case. *See* 18 U.S.C. § 3553(a).

## II.        Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the

U.S. Capitol.  *See* ECF 16 ¶¶ 1-7.  As this Court knows, a riot cannot occur without rioters, and

each rioter's actions – from the most mundane to the most violent – contributed, directly and

indirectly, to the violence and destruction of that day. With that backdrop, we turn to the

defendant's conduct and behavior on January 6.

*John Schubert, Jr.'s Role in the January 6, 2021, Attack on the Capitol*

On January 6, 2021, John Schubert, Jr. entered the U.S. Capitol building at approximately

2:22 p.m., by climbing through a broken window located next to the Senate Wing Door and

remained inside the Capitol for more than 30 minutes.

Prior to entering the Capitol building, John Schubert, Jr. and Amy Schubert got past

barriers set up on the grounds of the West Front of the Capitol and a line of armor-clad law

enforcement officers.

At approximately 2:03 p.m., law enforcement officers began to engage with members of

a mob, some of whom were assaulting officers and others who were ignoring the commands of

the officers. The United States Capitol Police had also set up amplification equipment that

repeatedly broadcast an order to the crowd to disperse.

Image 1 depicts what the West Plaza of the Capitol Building looked like at

approximately 2:20 p.m., around the time that John Schubert, Jr. and Amy Schubert traveled to

reach the Senate Wing doorway and the window that they used to enter the Capitol Building.

Image 1



At approximately 2:20 p.m., a rioter breached the area of the Senate Wing doors and adjacent windows, by breaking a window and climbing through that window, as shown in Image 2. Image 2 also shows the damage being done to the window to the right of the Senate Wing doors.

Image 2



Images 3 and 4 show John Schubert, Jr. and Amy Schubert, circled in red, as they entered the Capitol through a window adjacent to the Senate Wing doors at approximately 2:22 p.m.  In text messages that Amy Schubert sent on her cell phone on January 6, she stated that she and

John Schubert, Jr. climbed a wall to reach the Capitol Building, that they were maced, and

climbed through a broken window. These facts were repeated at both John Schubert, Jr.'s and

Amy Schubert's plea hearings and were agreed upon by both defendants.

Images 3 and 4





After entering the Capitol, John Schubert, Jr. and Amy Schubert walked upstairs and

entered the Rotunda, where they walked around from approximately 2:26 to 2:27 p.m., as shown

in Images 5-7.

Images 5-7







At approximately 2:27 p.m., John Schubert, Jr. and Amy Schubert entered Statuary Hall, as shown in Images 8 and 9.

Images 8 and 9





Image 10 shows John Schubert, Jr. and Amy Schubert in the Statuary Hall Connector at approximately 2:36 p.m.

Image 10



At approximately 2:42 p.m., John Schubert, Jr. and Amy Schubert traveled to the East

Stairs, as shown in Image 11.

Image 11



John Schubert, Jr. and Amy Schubert ascended a stairway on the eastside of the Capitol

Building and arrived at the Upper House Door area at approximately 2:43 p.m.  They remained

in that area for approximately ten minutes.  At approximately 2:54 p.m., while in the Upper

House Door area, they were ordered to leave the Capitol Building by United States Capitol

Police officers. They eventually exited the Capitol through the East Front House door at

approximately 2:56 p.m., as shown in Image 12.

Image 12



Amy Schubert also took photographs inside the Capitol Building, including of John Schubert, Jr. and other individuals inside the Rotunda. She briefly entered a Congressional meeting room to take a photograph of an individual holding a "Stop the Steal" sign and the rioters outside of the Capitol, as shown in Image 13.

Image 13



*John Schubert, Jr.'s Post-Arrest Interview*

John Schubert, Jr. voluntarily agreed to an interview with the FBI at the time of his arrest. During the interview, John Schubert, Jr. admitted that he entered the Capitol on January 6, 2021 without permission.

*John Schubert, Jr.'s Allocution Statement*

Prior to the sentencing, defense counsel provided John Schubert, Jr.'s allocution statement to the Court.  In his allocution, John Schubert, Jr. states that "*he went to Washington DC . . . to show my concern for the direction I saw my country going in.*" He adds, "*I felt it was [my] responsibility to future generations.*" He concludes his statement with the following:

> *I admit my emotions from witnessing these things over my lifetime overreached my common sense in January.*" *I was despondent. I wanted to engage in citizen Civil Disobedience. I was wrong. I was wrong for entering the Capitol. In retrospect, seeing the shame it brought to my country, my entry into the Capitol shames me. I'm sorry. I'm afraid my actions betrayed the motives of my heart.*

ECF 21 – Exhibit 1.

*The Charges and Plea Agreement*

On June 24, 2021, John Schubert, Jr. was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On July 26, 2021, he was arrested in Crest Hill, Illinois.  On September 20, 2021, John Schubert, Jr. was charged by Information with the same crimes.  On December 3, 2021, he pleaded guilty to Count Four of the Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G).  In the plea agreement, John Schubert, Jr. agreed to pay $500 in restitution.

## III.    Statutory Penalties

The defendant now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G).  As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months

of imprisonment and a fine of up to $5,000.  As this offense is a Class B Misdemeanor, the

Sentencing Guidelines do not apply.  18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

## IV.      Sentencing Factors Under 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a).  Some of the factors this Court

must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and

characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the

offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford

adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct.

§ 3553(a)(6).  We therefore turn to these factors.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6, 2021, is a criminal offense unparalleled in

American history.  It represented a grave threat to our democratic norms; indeed, it was one of

the only times in our history when the building was occupied by hostile participants.  By its very

nature, the attack defies comparison to other events.  So, too, does the conviction this defendant

now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 is

not like picketing at the Capitol on any other day, without other rioters present.  To portray this

crime as routine unjustly downplays what actually happened.

While each defendant should be sentenced based on their individual conduct, this Court

should note that each individual person who entered the Capitol on January 6 did so under the

most extreme of circumstances.  As a person entered the Capitol, they would—at a minimum—

have crossed through numerous barriers and barricades and heard the throes of a mob.

Depending on the timing and location of their approach, they also may have observed extensive

fighting with law enforcement and likely would have smelled chemical irritants in the air.  No rioter was a mere tourist that day.

Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum.  This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical facts, to include: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  While these factors are neither exhaustive nor dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

To be clear, had the defendant personally engaged in violence or destruction, he or she would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on the part of the defendant is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish the defendant from most other misdemeanor defendants.  The defendant's lack of violence and property destruction explains why he was charged only with, and permitted to plead to, a misdemeanor rather than felony.  While the above list is not exhaustive, a review of some of the factors is helpful in this context. For example, John Schubert, Jr. and Amy Schubert entered the Capitol building at 2:22 p.m. by first climbing up walls and climbing through a broken window located next to the Senate Wing Door.  They entered less than five minutes after other rioters first breached the Senate Wing door and adjacent

window. When John Schubert, Jr. and Amy Schubert entered the Capitol through the window, there were clear signs of damage, including the broken glass on the floor.  In fact, the window through which they entered the Capitol was not a normal entry point; the window had been broken by rioters.

In addition, John Schubert, Jr. and Amy Schubert were accompanied to the Capitol and inside the Capitol by John Schubert, Jr.'s son, whom Amy Schubert identified as "Johnny" in one of her January 6, 2021 text messages.

John Schubert, Jr. and Amy Schubert remained inside the building for at least 34 minutes. After entering, they walked upstairs and entered the Rotunda, Statuary Hall, and Statuary Hall Connector where they walked around from about 2:26 to 2:36 p.m.  Thereafter, John Schubert, Jr. and Amy Schubert continued to walk through the Capitol until they arrived in the area of the Upper House Door, where they remained for approximately ten minutes. They eventually exited the Capitol through the East Front House door at approximately 2:56 p.m., more than 30 minutes after they entered the Capitol Building.

With respect to statements and use of social media, while Amy Schubert posted about her January 6, 2021 activities in text messages and on Facebook, John Schubert, Jr. did not.  On January 6, she texted that she and John Schubert, Jr. climbed walls and entered the Capitol Building through a window. She also stated that they had been maced and "Johnny" had been clubbed and maced. On January 8, she texted that she was contemplating removing images that she had posted on Facebook so that she and John Schubert, Jr. could not be identified by the government.  These messages do not appear to be public messages and the government did not recover any posts or photographs from her Facebook account.

The government has no evidence that John Schubert, Jr. and Amy Schubert engaged in any violence or destruction of property, nor that they destroyed evidence after the riot.  But John Schubert, Jr. and Amy Schubert were firsthand witnesses to the riot at the Capitol and, by being maced, were personally involved in the riot.  Rather than allow their observations to deter either John Schubert, Jr. or Amy Schubert, they entered the Capitol through a window broken by their fellow rioters and within two minutes of that breach. Amy Schubert took photographs inside the Capitol, including photographs of John Schubert, Jr. inside the Rotunda. They remained in the building for at least 34 minutes, and left only at the direction of law enforcement officers.

In an interview with law enforcement officers following his arrest, John Schubert, Jr. acknowledged that he entered the Capitol on January 6 and expressed remorse for his actions.  In his written allocution statement provided to the Court before this sentencing, John Schubert, Jr. stated, "*I was wrong for entering the Capitol. In retrospect, seeing the shame it brought to my country, my entry into the Capitol shames me.*"

John Schubert, Jr. provided a similar statement regarding his acceptance of responsibility to the United States Probation Office. PSR ¶ 25.

Thus, the nature and circumstances of the offense, specifically the aggravating factors described above, suggest that a purely probationary sentence is inappropriate in this case and support a sentence of two months home detention and a probationary term of three years.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, John Schubert, Jr. has no criminal history. PSR ¶¶ 28-32. If the Sentencing Guidelines did apply to his offense of conviction, he would have no criminal history points. USSG § 4A1.2(c)(2).  Accordingly, he would be in Criminal History Category I.  USSG §§ 4A1.1, 5A.  John Schubert is retired. From 1969 to 2001, he was employed as a union

carpenter for the Carpenter's Union in Joliet, Illinois. PSR ¶¶ 48-50. He shares monthly income of $8,451 with Amy Schubert, based on rental property income, Social Security, and a pension. PSR ¶ 51. He has been in compliance with his conditions of release. ECF 11, 13. These factors support a lenient sentence than would be the case otherwise.

### C.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including in misdemeanor cases. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Sent. Tr. at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected.").

### D.   The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

---

[2] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

defendant.  18 U.S.C. § 3553(a)(2)(B), (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence, on the other hand, weigh overwhelmingly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration.  For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed.  When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble.  The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification.  It is a damage that will persist in this country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demand deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

John Schubert, Jr. consciously knew what he was doing was wrong at the time it was happening, yet he did it anyway. He and Amy Schubert climbed a wall to get to the Capitol and entered the Capitol through a broken window when the Capitol was under siege. The two then roamed through the Capitol for more than 30 minutes. At some point, John Schubert, Jr. and Amy Schubert were maced by law enforcement officers, but they were not deterred. To be fair, since being approached by law enforcement John Schubert, Jr. and Amy Schubert have shown contrition but it appears that some of that remorse is based in getting arrested.  In order to deter John Schubert, Jr. from ever engaging in this conduct again, the government believes that an adequate sentence in this case must have a significant element of detention and probation.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[3] Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes. A probationary sentence should not necessarily become the default.[4] Indeed, the government

---

[3] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[4]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna*

invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be." *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

The sentencing courts have already made meaningful distinctions between offenders. Those who engaged in felonious conduct are generally more dangerous and, thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but whose conduct involved aggravating factors, merit serious consideration of active incarceration, while those who trespassed, but engaged in less aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

John Schubert, Jr. has pleaded guilty to Count Four of the Information, charging him with parading, demonstrating or picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing

---

*Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long she remained inside, the nature of any statements she made (on social media or otherwise), whether she destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences.  And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement.  *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol

breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

As the number of sentences in the Capitol breach misdemeanor cases increase and the pool of comparators grows, the effect on sentences of obviously aggravating considerations has become apparent. The same is true for obviously mitigating factors, such as a defendant's efforts to prevent assaults on police and destruction of property.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court should consider the sentence imposed on *Jessica Bustle*, 21-cr-0238 (TFH) and *Andrew Bennett*, 21-cr-227 (JEB). Together, they generally present similar sentencing recommendations for individuals who entered the U.S. Capitol at later times, used Facebook to publicize their criminal conduct or livestreamed videos of their criminal conduct, and/or initially expressed of lack of remorse but eventually entered a guilty plea at an early stage to accept responsibility. Judge Hogan sentenced Jessica Bustle to 24 months of probation and two months of home detention, and Judge Boasberg sentenced Andrew Bennett to 24 months of probation and three months of home detention.

After a review of the applicable § 3553 factors, the government believes that John Schubert, Jr.'s conduct falls into the category of cases in which sentencing courts have imposed a period of home detention and probation. John Schubert, Jr. was a firsthand witness to the encounters by police and rioters on the West Front of the Capitol Building that was taking place when he and Amy Schubert approached the Capitol Building and entered the building through a broken window, ignored police commands to leave the building, and remained in the building for at least 34 minutes. Amy Schubert also sent private text messages about her and John Schubert,

Jr.'s conduct and experience and posted images to Facebook. Thus, John Schubert's conduct is not comparable to those who obtained a purely probationary sentence.

The Court should also consider the sentence to be imposed on Amy Schubert.  As the Court is aware, John Schubert, Jr. and Amy Schubert. are scheduled to be sentenced at the same time. Although they participated in the Capitol riot together, there are several notable differences between them. Of the two, Amy Schubert was the first one to enter the Capitol Building through the broken window and she traveled into a Congressional meeting room to obtain a photograph of an individual holding a "Stop the Steal" sign and of the rioters outside of the Capitol. Although a willing participant and follower of Amy Schubert, John Schubert, Jr. did not enter into that room and, unlike Amy Schubert, did not take photographs while inside the Capitol. He also did not send any text messages or post any pictures on Facebook about his activities at the Capitol on January 6, 2021. For these reasons, the government is recommending three months' home detention for Amy Schubert and two months' home detention for John Schubert, Jr.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095.

## V.    Conclusion

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a).  As detailed above, some of those factors support a sentence of incarceration and some support a more lenient sentence.  Balancing these factors above, the government recommends that this Court sentence John Schubert, Jr. to two months of home detention, three years of probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on John Schubert, Jr.'s liberty because of his behavior, while still recognizing his early acceptance of responsibility and expressions of remorse.  Additionally, such a sentence recognizes that some but not all the factors enumerated in Section IV.A., above, apply to this case.  It also allows continued monitoring of John Schubert, Jr. in the event of future participation in similar conduct.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By:      */s/ Anita Eve*
ANITA EVE
Assistant United States Attorney, Detailee
PA Bar No. 45519